STATE of Missouri, Respondent,

v.

Paul Wilbur DUNLAP, Appellant.

No. 51829.

Supreme Court of Missouri,
Division No. 1.

Oct. 10, 1966.

Motion for Rehearing or for Transfer to Court En Banc Denied Nov. 14, 1966.

him guilty and assessed his punishment at three years' imprisonment in the penitentiary. Sentence and judgment were rendered in accordance with the verdict.

Norman H. Anderson, Atty. Gen., Jefferson City, Edward P. McSweeney, Sp. Asst. Atty. Gen., Clayton, for respondent.

Robert G. Duncan, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

HIGGINS, Commissioner.

Appellant was charged by amended information in the Circuit Court of Boone County, September 23, 1965, with the felony of uttering a forged check in violation of Section 561.011, V.A.M.S. A jury found

■ Appellant says the evidence was not sufficient to support the verdict and that it was error, therefore, to deny his motions for acquittal.

The evidence, all from the State, warrants the following statement of facts: On October 22, 1964, Meredith Franklin Lee was the assistant manager of Eastgate IGA Foodliner, a corporation engaged in retail grocery business in Eastgate Shopping Center, 2000 East Broadway, Columbia, Boone County, Missouri. At about 7:30 p. m., appellant, Paul Wilbur Dunlap, tendered a check, Exhibit 1, in the words and figures following:

"Baltimore Bank
Kansas City, Missouri

ALLIED WESTERN MUTUAL INSURANCE COMPANY     7816
Kansas City, Missouri

Date  Oct. 20 / 64

PAY       The sum of $130 and 00 cts                          $130.00
to the
order of    John Ekstrom

ALLIED WESTERN MUTUAL INSURANCE COMPANY
s/                          Joseph A Pawlow."

Insurance Claim # 1674

Appellant, with Lee watching, endorsed the check "John Ekstrom, Green Valley Drive." Although requested by Lee to produce identification, appellant showed none and excused himself by saying his wallet containing identification had been stolen and that the check was an insurance recovery for the loss of his television set which he said had been stolen at the same time. Nevertheless, Lee cashed the check and gave appellant $130 in currency "because Green Valley Drive is right near the store." As appellant left the store Lee also noted on the check the license

number on the 1957 or 1958 model blue and white Chrysler in which appellant rode as a passenger. He later gave this information, together with a physical description of appellant to the police. The check was presented for payment to Eastgate's bank, Columbia Savings Bank, which returned the check unpaid. The drawee bank, Baltimore Bank, never honored the check, and Eastgate has never received any repayment of the $130 given to appellant for the check. Upon its return, the check bore a notation on its face and by a slip attached by Baltimore Bank, "Refer to

supt. of insurance." After taking the check Lee, later that night, checked the telephone book for Ekstroms and found no John Ekstrom. The only Ekstrom was shown at a different address. After the check was returned without payment, Lee made several trips to Green Valley Drive seeking John Ekstrom. There are but seven or eight houses there and he never located a John Ekstrom.

Joseph A. Pawlow, the purported signatory for the purported drawer of the check, an examiner in the Missouri Insurance Department, examined the Allied Western Mutual Insurance Company in Kansas City in February to June, 1964, after which, in late June, 1964, the company was placed in receivership with the superintendent of insurance as receiver. The company was in receivership and not doing business on October 20, 1964, the date of the check in question and a time when only the superintendent of insurance could sign its checks. Joseph A. Pawlow had no authority to execute checks for the purported drawer and he neither signed, used a rubber stamp, nor authorized the placing of his signature or a stamp on the check in question. He formerly had been with Jefferson Mutual Fire Insurance Company in St. Louis and had a rubber stamp signature there. He was not with Jefferson after September 1958 and, even though Allied took over Jefferson, Allied acquired no authority to use Pawlow's rubber stamp which he had not seen since September 1958. During the receivership Allied's manager unsuccessfully tried to raise money to redeem the company. The check purported to have been drawn by Allied as a claim check was not of the type used for claims by the company or its local agents despite a reference to claim on its face. Pawlow knew of no John Ekstrom or of any policy or claim such a person might have had against Allied. He knew of no other Joseph A. Pawlow in Missouri. Pawlow had become aware at trial time that a stamp of his signature had been used without authority on other Allied checks,

and that prior to receivership, someone within Allied had been diverting funds from the company.

Instruction No. 8 submitted the case against appellant. It is not questioned by appellant; it required findings of all the elements of the crime of uttering a forged instrument in violation of Section 561.011, supra, and the foregoing statement warranted the submission. State v. Garrison, Mo., 305 S.W.2d 447; State v. Forbus, Mo., 332 S.W.2d 931. The evidence warranted findings that appellant, on October 22, 1964, in Boone County, Missouri, uttered a forged check which purported to have been drawn by Allied Western Mutual Company, by Joseph A. Pawlow, to Eastgate Foods, Inc., by forging an endorsement purporting to be that of a John Ekstrom; that the check was a forgery because the purported drawer had no authority to execute the check by stamp or signature; that appellant knew the check to be forged and false and uttered it as true by forging the endorsement of John Ekstrom to defraud Eastgate Foods, Inc., of $130 given by Eastgate for the check in reliance on its genuineness.

Appellant argues, however, that the evidence did not make out a forgery because appellant may well have had John Ekstrom's permission and authority to endorse his name and appellant may have been using that name. He relies on the statement that "a person may assume a different name from his true one and may make contracts under his fictitious name." State v. Euge, Mo., 400 S.W.2d 119, 122 [2]. This argument overlooks the evidence that appellant was identified by Lee as the person who endorsed the check "John Ekstrom, Green Valley Drive," and Lee's failure to find appellant or any John Ekstrom in the limited area encompassed by seven or eight houses on Green Valley Drive, the address where appellant represented that John Ekstrom lived. Such was sufficient to authorize submission to the jury of whether John Ekstrom was in fact

false and fictitious. State v. Thompson, 318 Mo. 623, 1 S.W.2d 151, 153 [1].

Cases cited by appellant, although accurate on their facts, do not support his position: State v. Robinson, Mo., 255 S.W.2d 811, held that one charged with bogus and no-funds checks in violation of Section 561.450, V.A.M.S., could not be convicted where the proof showed only the giving of an insufficient-funds check; State v. Scott, Mo., 230 S.W.2d 764, held that a no-funds check charge under the same statute could not be sustained without proof that defendant had no funds in his account when he wrote his check; State v. Griggs, Mo., 236 S.W.2d 588, held that proof of giving a no-funds check would not support conviction under charge of obtaining money under false pretenses.

■ Part of the closing argument by the prosecuting attorney follows:

"If Paul Dunlap uses the name John Eckstrom, or if there is a John Eckstrom, or if Allied Western Mutual had this claim, why didn't the Defense put some evidence on here today to show you that? Don't you think they would have if they could? * * * Gentlemen, don't you think that they would? You haven't heard one scintilla of evidence from the defense in this case." Appellant contends it was error to refuse his motion for mistrial directed at this argument on the ground that it constituted prejudicial comment on appellant's failure to testify in violation of the Missouri and United States Constitutions, Section 546.270, V.A.M.S., and Criminal Rule 26.08, V.A.M.R. See also Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, which struck down a statute which permitted comment on an accused's failure to testify.

The constitutional provisions protect one from being compelled to testify against himself in a criminal prosecution; the statute and rule provide that "If the accused shall not avail himself * * * of his * * * right to testify, * * * it shall not be construed to affect the innocence or guilt of the accused, nor shall the same raise any presumption of guilt, nor be referred to by any attorney in the case, * * *." Such provisions have been held not to have been violated by arguments similar to the one in question, e. g.: State v. Varner, Mo., 329 S.W.2d 623, 633 [18], "* * * they have offered no defense to you"; State v. Perkins, Mo., 382 S.W.2d 701, 705, "And the only evidence in the case is the evidence that the State produced * * * You have the duty to find out through your deliberation based on the evidence, the only evidence produced was the State's evidence, whether or not he is guilty—* * * If you were accused of murder * * * and you were innocent of that crime and could prove that you were innocent of that crime, wouldn't you do it?"; State v. Michael, Mo., 361 S.W.2d 664, 666, "* * * when the state had concluded its evidence in this case the defendant [defense] was free to offer any evidence it chose and none was forthcoming"; State v. Hayzlett, Mo., 265 S.W.2d 321, 323, "When the State closed the evidence, what did the defense offer? They offered no evidence at all." Under this sampling of the authorities the present argument is no more than the equivalent of saying that the evidence, all of which came from the state, stands without contradiction or dispute from the defense, which does not constitute error. State v. Hardy, 365 Mo. 107, 276 S.W.2d 90, 95 [8, 9]. Nor is the statement comparable to the prejudicial reference in State v. Dupepe, Mo., 241 S.W.2d 4, 7 [6], "He * * * has absolutely nothing to talk about in this case. He has no evidence. The defendant has not even testified."

Those matters for which no assignment of error is required have been examined as required by Criminal Rules 28.02 and 28.08, V.A.M.R. The amended information is sufficient and in proper form; the defendant stood trial upon his plea of not guilty; the verdict is in proper form and

responsive to the issues and the punishment is within legal limits; defendant's motion for new trial was considered and allocution was granted. In addition, defendant had the benefit of counsel throughout his trial, in preparation of his motion for new trial, upon allocution, and upon this appeal.

The judgment is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.